Case number 9-2-17-0435 James Doe, et al., plaintiff's defense, v. Chad Coe, et al., defendant's attorneys. Arguing the roll, we have the defendants' attorneys, Mr. Kevin N. Lyons. Arguing the roll, we have the defendants' attorneys, Mr. Michael Allen, please. Good morning, all. Mr. Lyons, if you're ready, you may proceed. May it please the Court. Counsel. My name is Kevin Lyons, and I represent Jane Doe, Jane A. Doe, and John Doe, the appellants in this matter. The underlying case... Mr. Lyons, excuse me, could you pull the microphone down a little bit so our listeners can hear you and I can hear you? Sure. Thank you. Is this better, Your Honor? A little bit up. There we go. Okay. The underlying case involves the rape of a child by a 31-year-old director of youth ministries on a couch in a basement classroom in the church during the summer vacation Bible school program in June of 2013. The rape was a culmination of 18-plus months of earning at the church during the church programs and events. Coe first met Jane Doe through the FCC confirmation program in 2011 when she was just 13. At the time of the rape, she had just turned 15. Jane Doe participated in the... I was going to suggest, we do know the facts. Okay. If you want to get into your law issues... Sure. No, no, that's the point. So we're at a 2-6-15 dismissal of nine counts. The nine counts are directed at both FCC and James. There's negligent supervision, negligent retention, negligent hiring only against FCC, and then two willful and wanton counts. Also on appeal is the issue of whether the post-rape facts that are alleged in the complaint are material. Those facts were stricken by the trial court. How are those material? Well, we are alleging willful and wanton conduct. And as most recently by the first district in the Catholic Bishop of Chicago case, noted that willful and wanton conduct is a matter of degrees, above negligence, ordinary negligence. The post-rape facts that we're referencing here, for example, is that after the rape occurred, a friend of Jane Doe, who we named Sally, goes in, confronts the perpetrator in the church very loudly, then pulls his two children from this Costa Rica trip. Reverend James does nothing. Reverend James doesn't ask why these two kids were pulled. There was already a mandatory reporter who told Reverend James at that point in time about her concerns between inappropriate conduct between Coe and Jane Doe. And what James did... What does inappropriate refer to? Well, that's the question you're asking. Throughout the complaint. In our original complaint, we had used the word inappropriate. The trial court dismissed that complaint and asked us to define inappropriate. We defined inappropriate as conduct that violates both criminal code, that would trigger ANCRA, as well as violate the safe church policies that were adopted, promulgated, and disseminated by the UCC and the ICUCC. Is that enough for a defendant to defend, or just general allegations of inappropriate conduct? Absolutely. And why is that? Because inappropriate conduct, by definition, if it's violating ANCRA, there's a mandatory reporting that is required by the mandatory reporters at the church. And that's not left to the supervisor at the church to make a determination as to whether they should or shouldn't. They're divested of that immediately when they should have known. And that's also covered in the Domosky case. Why shouldn't you have to specifically say, with respect to each allegation, the conduct that you're pointing your finger at? It seems as though you want to take the shotgun approach to everything. Well, we put specific examples in the complaint. For example, the lap sitting is one example, which counsel had said, well, one lap sitting is enough. But one lap sitting is enough in this context if it's sexual in nature, if there's gratification, and if it's in an organization such as a church. We have clergy who are mandated by ANCRA to report that activity. We also have a church with, in terms of specifics, we have the director of youth ministries showing pornography in the church to teens, to youths, to the youth group, in the church. The fact that that is allowed shows two things. Number one, that they don't have any internet safety provisions at all in that church. And number two, that he felt so comfortable and so emboldened, and the environment was such that he was allowed to show children pornography in the church itself demonstrates what kind of environment that we have here. And yes, the nearing, the touching, the fondling, we allege all of that conduct occurred. And we do allege that one FCC employee actually confronted Coe about his inappropriate conduct, which included not just sitting on laps, but kissing, fondling, grabbing, inappropriate or excessive attention between an adult and a minor. Is that person identified? In the complaint? Yes. No, that person is not identified in the complaint. Very often in the complaint you allege multiple employees, volunteers, et cetera, look or see or observe. Yes. I realize you don't have to plead or prove your case in the pleadings, but it's very vague. Shouldn't there be something more for a court and a defendant or respondent to hang their hat on so they know what to defend against? Well, the 2615 stage, I believe that I'm allowed to make the allegation, and I have a good faith basis for it, that an FCC employee reported to James or an FCC volunteer reported to James. If the court is asking me to put forth the names of all the witnesses in the pleading stage, then I wouldn't need any discovery as to the other. But the bigger problem that I'm having is many, many, many paragraphs say multiple FCC employees, volunteers, et cetera. You may have a good faith basis, but it's hard when every single paragraph alleges multiple. And there's only one paragraph, and that's Sally's father, that's specifically identified not by his name but by the fact that he is the friend's father. Everything else is multiple, and that makes it hard to follow this complaint. Well, I do reference the one single mandatory reporter who was a volunteer that witnessed Jane Doe and Coe together, and after two days of seeing them together, identified the conduct as inappropriate. And immediately did not report, did not follow her obligations by reporting to DCFS. That is correct, and that's one of the basis for obviously attaching duty and liability in this case. But she did report to James. Why is it that that one person who sees these two people together, an adult and child, after two days picks up on it, but Reverend James does not after 18-and-a-half months plus? Well, you have several allegations that Reverend James was in the office when Jane was there. That's correct. At least, I think you said four times, but the fact that stands out there is there is a child in an office with an adult. That's correct, Your Honor. And the reason why that's important is when James sees Jane Doe alone with Reverend Coe on no less than three occasions, that's a violation of the two-adult policy that was promulgated by the church, by the ICUCC, instituted by the UCC, adopted by the ICUCC, which is composed of James and FCC. And the reason why that's important is because that safe church policy is a comprehensive policy aimed at preventing child abuse, which is compliant with Illinois law, criminal code, and ANCRA. So that violation alone is sufficient to establish a duty. And I think that you would see that under Demoski as well. There's other cases that are outside the context. I try to keep our case law within the body of child molestation cases. With respect to the trial court's granting of the motion to strike the First Amendment complaint, the motion covered numerous allegations in the complaint. The trial court appeared to grant the motion in its entirety. Are you challenging the court's order as it pertained only to the events that occurred after the alleged rape? Well, I'm actually challenging his entire order, Your Honor, because he would not specify which paragraphs he was striking. Did you file a motion to reconsider to ask the court to specify? I did, and he did not. And I actually asked him during the oral argument to put what paragraphs in the order, and that was not provided to me. So can you just summarize what is the basis of the duty? Well, there's several basis. The common law basis of the duty, well, there's three exceptions to the general duty rule, right, as set forth in brief. The custodial caretaker, the voluntary undertaking, the master servant. For the custodial caretaker and the voluntary undertaking, we have no issue with custody or voluntary undertaking portion. The next step is reasonably foreseeable and whether this rape was reasonably foreseeable. And the standard when you look at McLean is whether the actual event was something that was freakish, bizarre, or fantastical in light of the circumstances. And given what was going on in this church, both specifically what James saw, what was reported to him, the lap sitting, the pornography in the church, the Snapchatting, and everything else, that makes it reasonably foreseeable, those specific facts. But also, because there's a violation of ANCRA, we also then have, as well as a safe church policy that is in support of ANCRA, we have those violations as making the rape reasonably foreseeable. I think that where there's a legal duty and an internal policy that's in furtherance of that duty, a violation of that internal policy makes the act being prevented reasonably foreseeable. And I think that that's where we're at with the law on this. There are allegations at paragraphs 177 and 178 of the complaint. And this is when a co-representative was waiting for an employee to come and retrieve him for an employee meeting and he was in his office. He sent a picture to Jane. When, it says on one occasion, and then on other occasions is 178. When do these two events, or when does the first, the picture happen, and are the other occasions after, before, where are they with reference to this particular situation that we're here about? When are they occurring? They're occurring before the rape. The allegations, as we state in the trial court, they're pledged chronologically and in the order in which they occurred. For example, in 177, that is actually a Snapchat photograph. Which disappears, doesn't it, immediately or within moments after it occurs? If that were only, if it were. If that were only true? If that were only true. I understand, but it's designed that way. It is designed that way. However, the recipient can actually freeze frame the photograph. And that is part of the criminal proceeding. All right. And then on other occasions co-sent Jane Doe pictures of a similar situation with other language. Yes. When did those occur?  Again, before the rape as pledged chronologically. And other than Jane, who had seen these before the rape? Or who knew about these? That is going to have to be decided during discovery. The one point of these Internet policy violations is, again, the comprehensive policy that the church had in place was to prevent friending of people. Well, to prohibit it. Prohibit it. I mean, you can't really prevent it. You can prohibit it. I mean, if a person is going to engage in that conduct, he or she is going to engage in that conduct and run the risk that they're going to be caught unless they're supervised at all times. Correct? Or even supervised once. Because this gentleman had a Blue Scott 88 handle, which was known. How could the church have been aware of that? Google his name, and then see Blue Scott 88 comes up, and then you'll see Blue Scott 88 on child porn sites. The argument with respect to the negative entire hiring is that even without policies in place, that should be routine if you're hiring somebody who's going to supervise children. Correct? That's correct, Your Honor. How would they have found that pseudonym prior to hiring him? Again, just Googling his name. Right. And I don't believe that you allege specifically what if you did it then, you would have found whatever. We did. We actually said at all relevant times, and we actually added that language. Right. But, again, with all relevant times, this happened, that happened. And the reason. The lack of specificity. I didn't mean to cut you off. Sorry. But my point is the lack of specificity as to when these things occurred. Because the church's safe church policy required them to actually have that investigation pre-hire as well as post-hire. So there just wasn't a duty for them to investigate his conduct before hiring him. There was also an ongoing obligation under their own safe church policies. Well, the safe church policy required a background check. Did it specify, as you put it several times both in briefing and in your complaint, a simple Google search? Did it require a simple Google search, or is that something you're interpreting the background check to incorporate? No, the simple Google search is outside and separate from an actual background search that you would conduct. So my point of a simple Google search is, in this day and age, that a person who's hiring an individual that's going to be in charge of youths in a church or any other organization should do some due diligence on that individual. Yes, a background search should have been conducted. We allege that it wasn't. And the reason why we don't, upon information and belief, is because Coe's father was on the FBA, which is the branch with the ICUCC. And so that's why we allege that there was no background investigation conducted. What was done prior to him being hired? I am at the 2-6-15 stage, and I don't know without discovery. I'm not going to find out to what extent they did or did not conduct their background investigation. But obviously it was insufficient by the fact that this man was on child porn sites and known to be on child porn sites. Known. There you go again. Known by whom when? By the Internet. If you go on Google and search his name. But again, the question is, would you have found that prior to his hire? I would think, isn't that something you have to allege? Not speculate. They were fact pleading, not conclusions. And I don't mean to pin you into a corner. No. I mean, that's my point, is that globally, they would have, should have, could have. If you had plugged his name in, what would you have found then? Now, that's the pre. So your position is they should have done this post-hire periodically. It's an ongoing investigation. Correct me if I'm wrong, but I don't recall anywhere where you suggest it should be done every six months, once a year, once every five years. I don't suggest it because my suggestion is that they follow their own safe church policies and that they follow the guidelines set forth, which they didn't do. And that's an allegation that we have in the complaint. In terms of the conclusory nature of that, is we do, if you read the allegations on. Would you just give me a second? That there was no further investigation beyond Doug Koh's recommendation. At all times relevant, Koh had used Blue Scott 88, handled Blue Scott 88 on numerous, was used on numerous pornographic and child pornography sites. Basic Google search would have revealed Koh's pornography activities and no investigation was conducted at all. So based on that allegation, you're saying that that encompasses pre and post? Yes. Okay. You mentioned earlier with regard to the questions about the Snapchat, that that's part of the criminal case. I take it that the criminal case is still ongoing, hasn't been solved yet? No, it's still ongoing, Your Honor. Counsel, you will have an opportunity for response if you're after Mr. Mises. Thank you. Mr. Rieslis. Good morning, and may it please the court, counsel. Pull it up a little bit so you don't get a stiff neck. Okay. My name is Mike Rieslis, and I'm here today on behalf of the defendant's appellees. The plaintiff's negligence claims were predicated on either a special relationship, an employment relationship, or a voluntary undertaking. Is there a disagreement in this case about a special relationship? It was not raised at the 2615 stage. It wasn't directed. For purposes of this motion, I think you have to assume there was one. All right. Okay, thank you. Because Illinois is a fact-pleading jurisdiction, regardless of the theory alleged, plaintiff had to set up well-planned facts showing that the assault was reasonably foreseeable. Despite three attempts, plaintiffs failed to make this necessary showing. Have you ever heard the saying, character is what you are in the dark? That something that's become well-known over these last couple of decades is that you can't trust any adult to be alone with children in an organization, whether it's a school, whether it's a gymnasium, whether it's a church, that you need to have policies in place to protect. Yes. Children against sexual abuse. Yes. And I hope I didn't say anything in the brief or during the argument today that would suggest otherwise. But, you know, at the same time, context is everything. And not every violation means that there will be a sexual assault two years later. But according to this safe church policy, it would appear, looking at the actual policy, and it's thumbnail, if not the actual policy, that even a single incident of violation should require additional investigation. I'm not going to be up here today disputing what the policy is, but what I'm saying is that not every violation of the policy has the same result. Let me give you an example. Let me give you an example. So paragraph 58 of the complaint alleges different examples of what is inappropriate. Okay. And some of the examples, depending on the context, would be pretty innocuous. Piggyback rides, hugs. Okay. And then there's behavior that is much, much more problematic. Okay. Well, there are inappropriate displays of affection. They're just not inappropriate according to this insurance board publication, which contained a sample policy. These are things that they look to. Yes. Their general counsel look to. And the word inappropriate is how each interaction or contact is alleged in the complaint that allegedly either we knew or should have known about. And I don't know how you can look at those allegations and say, well, we know that the assault is reasonably foreseeable based upon, quote, something that's inappropriate. What was it? I mean, even with regard to the vacation Bible study, which it would think would be probably the most serious one because it did involve allegedly a mandatory reporter, right? What was it? What was the interaction that was supposed to be inappropriate? And we don't know. Well, I mean, I'm sitting there, and counsel referred to it, and, you know, you write the brief, you review the record, you want to know in some respect. I'm only the appellate guy, okay? So, you know, I didn't have this case in the trial court. I can't speak with the same knowledge that you would expect the plaintiff to have. But what was it that was the inappropriate interaction? Members of the youth group enter on his sleeping bag, and he in an area close to the children by himself? Well, that's not what was alleged in the 2013 June vacation Bible study. That's not what was alleged. There was an instance that was alleged, not that we knew about it, going back to I think it was 2012, late 2012. But I'm talking about June of 2013. There is no allegation as to what that inappropriate interaction was. Look, let's forget about, not forget, but set aside the allegations, the general allegations of inappropriate conduct. Isn't it reasonable to infer from the church's two-adult policy that there's a general belief that sexual abuse may occur in settings where an adult has unsupervised access to children? That's the reason they put the policy in place and never enforced it. Are you not contesting that the church was required to abide by the policy? I have to say for the 2615 purposes, I have to assume it's true. You have to assume it's true? I'm not here to talk about any factual allegations. You agree that for purposes of our review, we take it as fact? Yes, for this purpose. Then how is it not reasonably foreseeable if the church's policy says it's foreseeable by virtue of the two-adult policy? Well, if you took that to its conclusion, then you'd have to say that any violation of a policy, however innocuous it may have been at the time, would mean that an assault, what, two years later was reasonably foreseeable? Excuse me, but wasn't this ongoing, this two-adult policy and violations of it ongoing? It was three instances. Three instances over, what, a couple of years, a two-year period? Well, that's when Reverend James is alleged to have seen them. Which is important because that's the only thing that he's alleged to have actually seen. He didn't see the interaction in the vacation Bible study, and he's not alleged to have seen the confirmation incident. The only thing he saw was a violation of the two-adult policy when there was no contact at all. But there still was, in his office, with the door open, and one child, one adult. Yes. And he did nothing. He did nothing. That's what's alleged. I have to accept what's pledged. But, again, you have to think in terms of what is reasonably foreseeable at the time, not with 20-20 hindsight.  Some of the paragraphs are very explicit, very graphic. And there is an Internet safety policy, too, that's allegedly in effect here. And, of course, we don't know exactly when, but it's in paragraph 243, when Coe showed the underage members of the youth group a video, I think, called the Rainbow video, involving minor girls and lipstick. Yeah. This is not unusual? It's not foreseeable? Okay, but what are the facts that put that burden as far as, when did we know? Well, the question is not because you should have known it. It just says when it was known or should have been known. It occurred in the church. During church, normal working, I think he calls them normal business hours or normal church hours or something. It's going on in the building. If you look at the case law, if you look at Damofsky, which has been discussed, and if you look at Plaston, which is cited and discussed in the briefs, you have something very explicit that makes the assault reasonably foreseeable. That puts the NAD on notice. Yeah, it puts it exactly on notice. And here, we have shocking allegations here. I'm not trying to minimize this at all. I'm just saying, but what is it that's actually alleged against, not against Coe, but against Reverend James and the church? What about the negligent supervision claims and negligent hiring? Yes. Was the background check sufficient? Which is basically all we know from the complaint is that it was basically a reference from Coe. Well, you know, I may not be the best one to talk about what is technologically feasible on the Internet, but I don't know how a cursory Google search, and that's the actual word that's used, cursory Google search, would have discovered his online presence at pornography sites. I mean, it's alleged in the complaint that if you did a Google search, you'd find him. It was alleged that you would find that he had a username, bluesguy88. I don't, I mean, he could, I mean, the plaintiff could allege anything in the world, but again, I don't know how you could allege that you can find out somebody's Internet history at pornography sites just because you know their name from a cursory Google search. I think the plaintiff's point is that the church failed to do what's reasonable in today's day and age, especially in light of what our Supreme Court has said in Jane Doe v. McLean School District No. 5, that the protection of children is of paramount importance. In particular importance is the protection of children from sex offenders, and sex offenders use the Internet on a regular basis to lure children, to solicit children, to groom children, and the allegation here is that the church did nothing to find out what Cole's propensities were, nothing. Well, first of all, if they had done the background check, he had no alleged criminal history, he had no prior relationships with children, and there's no allegation that, at least as of May 2009 when he was hired, that he was actually visiting those sites, or how we would have known from a cursory Google search that he was doing so. I mean... Well, wait a minute, you know, I appreciate that those of us of a certain age, the Internet is something of a mystery, but if you're hiring someone to be with 13, 15, 16-year-old kids, they can run circles around the rest of us. I would think that there would be a heightened interest in this person's Internet prowess because they're going to be working with kids. Judge, I can't disagree with you. I mean, I'm not disagreeing with you. All I'm saying is that what was pled as to... Now we're talking about the negligent hiring. What I'm saying is, you know, a cursory investigation would reveal X. Would it reveal what? I mean, I don't know what it would have revealed because, again, I don't believe that you can find out somebody's search history at a pornography site just by Googling the name into a computer. But that's the allegation. We have to take the allegations as, if they're sufficiently pled as, true. That's what's alleged, that if the church had simply looked at his name on Google, it would have shown his pseudonym, and if you looked at the pseudonym, you would have found out that he had these propensities. That's the allegation. The allegation has to be reasonable. I don't know that that's a reasonable allegation. Isn't that a question of fact for the jury? I don't think it's a question of fact if it's something that's not possible. Well, there may have to be proof, if this ever gets to trial, that, by an expert, that four years before the event of June of 2013, this could have happened. There may have to be that proof. But there doesn't have to be that proof in the allegation in the original complaint, correct? Well, you don't have to plead evidence. I agree with you. You don't have to plead evidence, but you have to plead facts that are reasonable. I mean, you could plead that the earth is flat and then say, well, prove it. Well, let's talk about what is reasonable, then. Yes. Why should we not hold the IUCC and its member churches to the standard of care they impose on themselves with their two-adult policy? The issue is not whether or not there was a policy there was. The issue is not whether the policy was violated. I'm saying again, you have to assume that the two-adult policy was violated on three occasions in two years. The question is, is that violation a basis to find that the assault was reasonably foreseeable? Is every violation of a policy, however inaccurate as it may seem at the time, give rise to... Well, you're mixing negligence with failure to supervise, negligent supervision. Whether we're talking negligent supervision or we're talking about a negligent voluntary undertaking, the assault has to be reasonably foreseeable. Negligence, if you want to equate negligence with anything, it's with the concept of what's reasonably foreseeable. Isn't the adoption of the policy itself evidence that sexual abuse by adults who have access to children is foreseeable? And that's why you have the policy to protect against it. But it has to be specific to the individual. You can't just say, well, you know, we recognize... Going back to one of the first questions, yes, Justice Burkett. We recognize that this is a serious problem and maybe we don't have this... We have a greater awareness of that problem now than we had two decades ago. But in each case, you have to allege facts under a fact-pleating jurisdiction as to what makes a specific assault that took place reasonably foreseeable, based on what was known at the time, not based on 2020 hindsight. But isn't there... I mean, the policy is anybody who is going to deal with youth, and youth is, I'm sure, defined by age or school years, must have two people, two adults, in a room at a time. Why? That's been alleged. And you said three. There is a... In paragraph 297, that's the FCCD volunteer who's at the Vacation Bible School. We're not talking there necessarily about supervision of two adults, because it's probable that this volunteer is an adult. Or someone who is at least 18 years old, because Vacation Bible Schools often have other members of the parish who are younger participating. But that's where we have an additional alleged violation, where there is the call that the conduct... And this is just days, allegedly, before the rape is inappropriate. I mean, it's not the only... We don't have just three events that have been reported. We have... There's no allegation in paragraph 297 through 300 that there was a violation of the two-adult policy. No, but it was another... Yes. It was an observation of conduct that was considered to be in violation of the safe church policy. But what was the conduct? Could it have been... I mean, I don't mean to minimize it, but could it have been a piggyback ride? That would have been inappropriate. Well, it could have been. Right. And would you say from a piggyback ride that the sexual assault, you know, however long... I've seen less. I'm just saying that. And I've seen that in my 36 years. And I'm sure there have been times when, you know, piggyback rides happened without further consideration. I mean, I don't mean to, you know... Again, part of the frustration with this complaint is it's got 558 paragraphs. It's 70 pages long. In some respects, it's very detailed. And in other respects, the most crucial respects as to my clients are concerned, it really says very little or it's a matter of multiple choice. You've got a list of inappropriate contact or interaction. Pick and choose. What was it? And that is, I have to tell you, at least for me, that was frustrating. And I say that not only as an advocate, but as somebody who... I share your frustration. It's a difficult complaint to navigate. Yes. But beyond that, it appears that there is a primary concern with a safe church policy and an Internet safety policy that is alleged to have not been followed on more than one occasion. That's the bottom line of this complaint. I would say I have to assume, you have to assume it's true that there were these violations. I can't... I mean, I couldn't say that. But I would say this. This is on the third attempt. And, you know, Plaintiff was not pleading with a vacuum. Plaintiff has the criminal file. Plaintiff has the DCFS report. This is not, you know, another case where you have to do a lot of discovery to know really what was going on. I mean, this is because of the access to these reports and files. It's something where if the plaintiff really could plead what that interaction was in June of 2013, I think he could have done it because he seems to know there was a mandatory reporter. He seems to know when it happened. And he seems to know that something was communicated. He just won't tell us what. And that, to me, should never be, under faculty jurisdiction, a matter of guess. I think my time is up. I think we have a question. Oh, one more question. Okay. Well, two. Two more questions. And listen to what you say, and I'm not unsympathetic to your position, but it seems to me is how far in the sand can this church put its head and say, oh, it was just one piggyback ride. Oh, it was just one time the door was open. There was a Mr. Coe and a young girl in his office without a second adult. How many of these, as you phrase them, innocuous things finally set off an alarm? How many times can we violate the policy and still say, well, let's look at them in isolation? I'm not asking you to look at it in isolation, but I'm saying over what I think was a two-year period. If you go from, I think, the confirmation incident, I think it's June of 2011, and then you're going. So over two years, we don't know. I mean, the confirmation incident, we don't know because the plaintiff does not allege when it was that we knew about it. It doesn't allege that Jane saw it or that anyone was present. In fact, the allegation is that the adults complained about it only after Coe was arrested on July 3, 2013. So I'm not too sure what that incident is really saying. The second one was the violation of the two-adult policy, no contact whatsoever. We've already said that. That's one time, okay, but there's no contact on any occasion, three times. And then the last one, again, is the vacation Bible study. And after a 20-minute argument from plaintiff and after a 20-minute argument from me, I have to say it. One of us has been too enlightening to ask to tell you what that contact was. But I take your point. Depending upon what the facts were that were alleged specifically, certainly you'd have to say at some point, the ostrich, you know, you can't be an ostrich. Right. I hear that loud and clear. But 558 paragraphs, and what are we talking about? A confirmation incident, the office, you know, and this, you know, the mandatory reporter who witnessed something that the plaintiff can't put into words. So, yes. My second question is, do you have an ongoing obligation to continuously do background checks on those that work with you as counsel representatives? I don't. I have not seen that allegation. I can't say in a 550-paragraph complaint that it might not be there somewhere, but I did not come across it. So, but the question is, do you or don't you have that policy? I mean, I don't know if they have that policy or not. But I can tell you that I think the law would not, I don't think the law would require it. I don't think the law would require it. And as far as a policy is concerned, I don't think that that policy, I don't think an internal policy by itself gives rise to a duty of care. And I know that we did cite cases, Rhodes v. Illinois Central among them, that say that, generally speaking, an internal policy is not going to give rise to that duty. So, if there was such an allegation, I don't think that by itself would give rise to a duty. Okay. Fair enough. I want to thank the court this morning for giving us the opportunity to argue. I know this is a difficult case, and I don't mean to suggest otherwise, but based on the case law, Dabowski, Hernandez, the Doe cases, much more was alleged in those cases than what we have here, specifically with regard to the issue of reasonable foreseeability and notice. For all the reasons set forth in our brief and argued this morning, we ask you to affirm. Thank you very much. Thank you, Mr. Rees. Mr. Lyon? Thank you. I think the most important part that I'm concerned that we're missing here on the reasonable foreseeability, the question is, to whom must it be reasonably foreseeable? And all I keep hearing out of counsel is James and FCC. That is not the standard. The standard is, it's a reasonably prudent person. It's an objective standard. But the only ones responsible here are James and the UCC. Under this appeal. Yes. And so I said I shared Mr. Rees's frustration. I've read this complaint many times. And because I felt like I needed to have, you know, signs telling me where to go back to and where to come from, it's very difficult to synthesize the issue. Inappropriate conduct could be, if what you're saying in this complaint is, every time you use the word inappropriate conduct, all of those things happen that you've identified, then I guess I understand the complaint. If you're saying no one of those or two of those things happened, I think there is an obligation under this type of a complaint to tell us which one. I understand you don't want to limit yourself, but there still has to be some way for them to defend. Do they have to defend each and every allegation that you've defined in inappropriate conduct? I guess is the bottom line question. Do they have to say that didn't happen, that didn't happen, or it was just, you know, people being people? That's, I think, the problem here. Well, it can be just one. Given the act. Showing pornography to children in a church is one such act. All right. Sleeping on a sleeping bag is another. Seeing the children, which is alleged. Seeing him alone with a child with the lights out in the AV room is another. Seeing the child alone with Coe in the sacristy is another. But how do we know the sacristy incident, the projector incident, or the projection room incident was known to the people who should have done something about it? Because we allege that employees, volunteers, and members actually witnessed this and reported this. Okay. What is it? And the reason why we don't name names and names were specifically left out, and what's not, what's part of the record that hasn't been discussed, is I had a motion early on in the case for discovery order because when I started contacting people, the question was, am I contacting a representative party? And does that representation of the church extend to volunteers? That ruling became moved by the court. Maybe that's another question. What obligation does a volunteer have under this safe church policy? An employee should because they're supposed to acknowledge and sign a sheet or sign something. Okay. So for a volunteer in this case, as we said, the volunteer in our situation was a mandatory reporter under ANCRA. And so that person... Fort Vacation Bible School. Yes. But you have at least 20 other allegations of multiple employees, volunteers, et cetera. The distinction between an employee and a volunteer becomes important under the master-servant analysis because that gets to the controllability, which is something we didn't discuss, but that's the distinction. But we do say that Coe was confronted. And I think that when we have people confronting him about his inappropriate conduct, and we have all of these things going on, and we have the violations of the safe church policy, it begs the question, would a reasonable, prudent person have seen this from an objective standpoint? And the answer to me is clearly yes. I understand counsel's frustration. I'm just as frustrated, but for different reasons. The other issue that I wanted to touch upon today was negligent supervision. And the reason I wanted to address negligent supervision is because of what the elements are that are required. We bring up Platt's, and Platt's I'll bring up as an example of it was well-known throughout the office that he sought out the girl, that there was an innocent construction of him grabbing her by the elbow, and that's what the trial judge here, and that's what I'm hearing from opposing counsel is a lot of this stuff is innocent. Innocent construction has already been found by this court, been rejected by this court as an argument against the reasonable foreseeability, using that contact for conduct for reasonable foreseeability. But in Platt's end, negligent supervision is alleged and it is considered, but then the actual elements are applied as if there was negligent retention. Mueller should have known for a particular unfitness. Counsel's brief, we cited Mueller as a first district case that says for negligent supervision, we have a duty to supervise breach of duty. Your common element is not the standard of Mueller should have known particular unfitness. While I think our complaint satisfies that, I think that when we look at the Van Horn case that was cited by counsel, and he cited Zalby-Krupa, and Zalby-Krupa footnote 4 actually recognizes, well, when there's a duty to supervise, there will be a negligent supervision claim with the element being the, you know, duty to supervise a breach of that duty, approximately causing damages. The Zal case cited Vancouver, which was an appellate opinion at that time, in April of 2010, and after that, in October of 2010, the Supreme Court in Vancouver actually confirmed that there is a distinction in this case between negligent supervision and negligent retention and set forth those as example. Now, what's interesting about that case too is, and I didn't want to go into outside the body of case law of child molestation cases, that case is actually about a notary act and the violation of the notary act. And because the notary act had an actual knowledge requirement in the act, that requirement of actual notice superseded, the common law should have known objective standard. But that case obviously would also support that we have the negligent supervision elements that we would have to meet as a different cause of action from retention. And that's all I have. Thank you very much, Your Honor, for your time and for obviously reading everything. Appreciate it. Thank you very much for your arguments this morning, gentlemen. We do appreciate them. We will take the matter under advisement, and we will take a short recess to prepare for our next case. Thank you.